UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NORTH CAROLINA DEPARTMENT OF REVENUE, <br><br> Plaintiff, <br><br> v. <br><br> FEDERAL DEPOSIT INSURANCE CORPORATION, in its capacity as receiver for Washington Mutual Bank and in its corporate capacity, <br><br> – and – <br><br> JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, <br><br> Defendants. | Case No. 1:10-cv-00505 (RMC) |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF
JPMORGAN CHASE BANK, N.A.'S MOTION TO DISMISS**

Robert A. Sacks (admitted *pro hac vice*)
Stacey R. Friedman (admitted *pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

Brent J. McIntosh (D.C. Bar No. 991470)
Bruce W. Hickey (D.C. Bar No. 479036)
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
Telephone:  (202) 956-7500
Facsimile:  (202) 293-6330

*Counsel for Defendant
JPMorgan Chase Bank, N.A.*

September 24, 2010

# TABLE OF CONTENTS

***Page***

TABLE OF AUTHORITIES ............................................................................... ii

PRELIMINARY STATEMENT ........................................................................1

BACKGROUND ..............................................................................................3

ARGUMENT ...................................................................................................5

I.     NCDOR HAS STATED A CLAIM AGAINST THE FDIC—NOT JPMC............5

    A.     NCDOR's Complaint Establishes that Under the P&A Agreement, the FDIC-Receiver Is Liable for the Proposed Assessments. ......................6

    B.     NCDOR Has Failed to Plead Facts that Would Support Its Theories of Successor Liability and Third-Party Beneficiary Status...........8

    C.     NCDOR's Arguments for JPMC's Liability Are Inconsistent With the Plain Language of the P&A Agreement. ..............................................10

    D.     NCDOR's New Materials Confirm that Liability for the Proposed Assessments Could Not Have Been Transferred Under the P&A Agreement...............................................................................................13

II.    LEAVE TO AMEND THE COMPLAINT SHOULD BE DENIED. ...................17

CONCLUSION............................................................................................18

# TABLE OF AUTHORITIES

*Page(s)*

### CASES

\* *Arbitraje Casa de Cambio, S.A. de C.V.* v. *U.S. Postal Service*,
297 F. Supp. 2d 165 (D.D.C. 2003) ............................................................13

\* *Bell Atlantic Corp.* v. *Twombly*,
550 U.S. 544 (2007) ......................................................................................5

*Brug* v. *National Coalition for the Homeless*,
45 F. Supp. 2d 33 (D.D.C. 1999) ..................................................................9

*Cole* v. *Burns Intional Security Services*,
105 F.3d 1465 (D.C. Cir. 1997) ....................................................................8

*Conley* v. *Gibson*,
355 U.S. 41 (1957) ........................................................................................5

*Danilyuk* v. *JP Morgan Chase Bank, N.A.*,
No. 10-0712, 2010 WL 2679843 (W.D. Wash. July 2, 2010) ......................8

*Foman* v. *Davis*,
371 U.S. 178 (1962) ....................................................................................17

\* *Franklin Asaph Ltd. Partnership* v. *FDIC*,
794 F. Supp. 402 (D.D.C. 1992) ...................................................................5

*In re Collins Securities Corp.*,
998 F.2d 551 (8th Cir. 1993) .......................................................................14

*Nextel Spectrum Acquisition Corp.* v. *Hispanic Information & Telecomms.
Network, Inc.*, 503 F. Supp. 2d 334 (D.D.C. 2007) ......................................7

*NRM Corp.* v. *Hercules Inc.*,
758 F.2d 676 (D.C. Cir. 1985) ......................................................................7

*Ponce* v. *Billington*,
652 F. Supp. 2d 71 (D.D.C. 2009) ..............................................................17

*Postlewait Constr., Inc.* v. *Great American Insurance Cos.*,
720 P.2d 805 (Wash. 1986) ...........................................................................9

*Santopadre* v. *Pelican Homestead & Savings Ass'n*,
937 F.2d 268 (5th Cir. 1991) .......................................................................14

*Schneider* v. *Kissinger*,
   412 F.3d 190 (D.C. Cir. 2005) ...................................................................6

*Schuler* v. *United States*,
   617 F.2d 605 (D.C. Cir. 1979) ..................................................................5

*Secretary of State for Defence* v. *Trimble Navigation Ltd.*,
   484 F.3d 700 (4th Cir. 2007) ....................................................................9

*Sparrow* v. *United Air Lines, Inc.*,
   216 F.3d 1111 (D.C. Cir. 2000) ................................................................5

\* *Trudeau* v. *FTC*,
   456 F.3d 178 (D.C. Cir. 2006) ..................................................................5

\* *Vernon* v. *RTC*,
   907 F.2d 1101 (11th Cir. 1990) ...........................................................7, 11

*Villafañe-Neriz* v. *FDIC*,
   75 F.3d 727 (1st Cir. 1996) ....................................................................14

## RULES

\* Fed. R. Civ. P. 12(b)(6) ...............................................................................5

Fed. R. Civ. P. 15(a) .....................................................................................17

## Other Authorities

5A Charles A. Wright & Arthur R. Miller,
   Federal Practice and Procedure § 1357 (1990) .....................................5

Defendant JPMC respectfully submits this reply memorandum of points and authorities in further support of its motion to dismiss the Complaint of the North Carolina Department of Revenue.[1]

## PRELIMINARY STATEMENT

JPMC moved to dismiss because the allegations properly before this Court dictate that the plaintiff's claim is against *one* defendant—the FDIC-Receiver—and not the other—JPMC.  Liability for NCDOR's claims turns on the plain language of the P&A Agreement between JPMC and the FDIC.  Under that agreement JPMC is liable only for WMB liabilities that were both reflected on WMB's Books and Records *and* reduced to a specific Book Value on WMB's Accounting Records as of September 25, 2008.  NCDOR's proposed tax assessments were *neither*, and so JPMC is *not* liable for the assessments.

NCDOR's dual Oppositions to JPMC's Motion to Dismiss make four arguments seeking to avoid this conclusion.  None has merit.

*First*, although NCDOR agrees that the FDIC-Receiver is liable for the proposed tax assessments—indeed, NCDOR concedes in its Complaint that the contrary position "is not supported by the language of the [P&A Agreement] and the law" (Compl. ¶ 33)—NCDOR pleaded in the alternative that JPMC assumed these liabilities under the P&A Agreement.  Because NCDOR has offered no allegations that would support this alternative theory, its claims against JPMC must be dismissed.  To the extent NCDOR

---

[1]    All abbreviations in this brief have the same meaning as in JPMC's Memorandum of Points and Authorities in Support of Its Motion to Dismiss.  (Docket Item 8-1 ("JPMC Br.").)

seeks to delay such a ruling while it looks for extrinsic evidence to support its alternative

theory, any such evidence would be unnecessary.  NCDOR's claims against JPMC can

and should be dismissed now, without the need for any further inquiry, because they run

counter to the unambiguous language of the P&A Agreement.

*Second*, NCDOR argues that JPMC is liable either because JPMC is a

successor to the FDIC-Receiver or because NCDOR is a third-party beneficiary of the

P&A Agreement.  Both theories fail.  To begin, JPMC assumed certain specified WMB

liabilities, not under a general theory of successor liability, but only to the extent

specified in the P&A Agreement.  In addition, NCDOR is not a third-party beneficiary of

the P&A Agreement.  And even if it were, its being a putative beneficiary would not

change the allocation of liabilities under the agreement, which leaves these tax liabilities

with the FDIC-Receiver.

*Third*, NCDOR now posits—for the first time—that its proposed

assessments *may* have been on WMB's Books and Records because the underlying tax

liabilities could have been calculated based on documents held at WMB, or because they

"accrued" before September 25, 2008.  These arguments are no more than a rehash of the

FDIC-Receiver's arguments, which JPMC has addressed and rebutted in its opposition to

the FDIC-Receiver's motion to dismiss.  The arguments fare no better here because they

rely on an untenable reading of the contractual term "Books and Records" and an

expansive understanding of the effect of supposed "accrual" that has no support in the

law or the P&A Agreement.  Nowhere in the P&A Agreement did JPMC assume

unknown, unquantified, unbooked liabilities that had theoretically "accrued"; rather

JPMC assumed only those liabilities with (a) Book Values on (b) WMB's Books and

Records (c) as of September 25, 2008.  As alleged, the liabilities alleged by NCDOR here did not even issue until December 2008 and thus could not have had Book Values reflected on WMB's Books and Records as of September 2008.  Liability for NCDOR's assessments, *which did not then exist*, did not pass to JPMC.

*Fourth*, with no leg to stand on in its pleadings, NCDOR now relies on a new affidavit and a passel of exhibits that, if they were properly before the Court, would only further demonstrate that WMB could not have reduced the proposed assessments to a Book Value on its Accounting Records in September 2008, and thus that JPMC could not have assumed any liability to NCDOR.  Because it is now clear that no amended pleading could overcome the fact that WMB failed before the subsequently proposed tax assessments came into being, NCDOR's Complaint should be dismissed with respect to JPMC and leave to amend should be denied.

## BACKGROUND

For a full discussion of the background to this litigation, JPMC respectfully refers the Court to JPMC's Memorandum of Points and Authorities in Support of Its Motion to Dismiss.  (JPMC Br. at 3-6.)  For purposes of this reply, JPMC notes the following facts relevant to NCDOR's arguments:

On December 29, 2008, three months *after* Bank Closing, NCDOR issued "proposed assessments" for taxes that WMB allegedly owed to NCDOR.  (Compl. ¶¶ 17-18.)  No party disputes that according to the Complaint, NCDOR had *not* provided WMB any notice of the proposed assessments before Bank Closing, and no party disputes that at the time of the assessments (and indeed, even now), WMB's position—as specified in its Books and Records—was that it was owed a *refund* from NCDOR.

- 3 -

Nonetheless, NCDOR filed with its second opposition brief an affidavit and exhibits showing that WMB filed amended tax returns that claimed refunds of taxes paid to NCDOR in previous years.  (Affidavit and Declaration of Jerri M. Noland, Docket Item 29-1 ("Noland Aff."); Exhibits to Noland Aff., Docket Items 29-2 to 29-9.) Some, but not all, of these returns resulted in what NCDOR calls "proposed audit reports," which began a still-unresolved discussion between WMB and NCDOR over WMB's proper tax liability, if any.  (NCDOR's Memorandum of Points and Authorities in Opposition to Motions To Dismiss Filed by JPMC, FDIC-Receiver, and FDIC-Corporate, Docket Item 29 ("Second NCDOR Opp.") at 7.)  The exhibits also show that JPMC worked with NCDOR to secure WMB's refunds.  These new (extraneous) materials are not alleged to exist in the four corners of the Complaint and should not be considered on a motion to dismiss.  The exhibits fall into three groups:  (a) amended tax returns for tax years 1998–2000, dated October 20, 2008, which clearly postdate WMB's failure; (b) evidence that NCDOR intended to challenge the refund that was on WMB's books when WMB failed (but no evidence that any liability was on WMB's books as of bank failure); and (c) waivers of the statute of limitations, a power of attorney, and requests for documents that have nothing to do with purported liabilities.  In any event, they do not alter the critical fact—NCDOR still does not and cannot allege that as of September 25, 2008, there was any entry in any amount in any of WMB's Accounting Records reflecting any tax liability to North Carolina.  The exhibits establish that WMB's Books and Records provided JPMC no notice of any sort of proposed liabilities to NCDOR before WMB's failure.

**ARGUMENT**

**I.     NCDOR HAS STATED A CLAIM AGAINST THE FDIC—NOT JPMC.**

NCDOR contends that JPMC's motion to dismiss should be denied because it "go[es] to the substantive questions and analyze[s] the Complaint based on sufficiency of the *evidence*, rather than whether they provide adequate notice to the parties of the nature of the Complaint."[2]  (Second NCDOR Opp. at 5.)  NCDOR misses the point.  JPMC has challenged the sufficiency of NCDOR's factual allegations in its Complaint.  NCDOR has failed to state claims *against JPMC*, as those allegations establish that any liability for the December 2008 tax assessments *is the FDIC-Receiver's*.  That is grounds for dismissal.  *See Trudeau* v. *FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (holding that it "'is possible for a plaintiff to plead too much: that is, to plead himself out of court by alleging facts that render success on the merits impossible'") (quoting *Sparrow* v. *United Air Lines, Inc.*, 216 F.3d 1111, 1116 (D.C. Cir. 2000)); *Franklin Asaph Ltd. P'ship* v. *FDIC*, 794 F. Supp. 402, 404 (D.D.C. 1992) ("[A] dismissal under Rule 12(b)(6) is appropriate in cases 'in which the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.'") (quoting 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (1990)).

---

[2]     NCDOR incorrectly cites *Schuler* v. *United States*, 617 F.2d 605 (D.C. Cir. 1979), for the standard for a motion to dismiss under Rule 12(b)(6).  (NCDOR's Memorandum of Points and Authorities in Opposition to Motion To Dismiss Filed by JPMorgan Chase, N.A., Docket Item 24-1 ("First NCDOR Opp.") at 4; Second NCDOR Opp. at 5.)  *Schuler* relied on the standard set forth in *Conley* v. *Gibson*, 355 U.S. 41 (1957), which the Supreme Court overruled in *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544 (2007).

More specifically, in its two briefs in opposition to JPMC's motion to dismiss, NCDOR proposes four theories to support its claim against JPMC.  All four fail: (i) NCDOR included no allegations in the Complaint suggesting that JPMC is liable for the proposed assessments; (ii) Nothing in the law or the P&A Agreement supports the notion that JPMC is liable for the proposed assessments under general principles of successor liability or that NCDOR is a third-party beneficiary of the P&A Agreement; (iii) NCDOR's arguments that JPMC assumed liability for assessments that were not formally on the Books and Records ignores the plain language of the P&A Agreement; and (iv) NCDOR's affidavit and slew of exhibits—which should not be considered on a motion to dismiss in any event—only confirm that the tax liabilities remain with the FDIC-Receiver.

> **A.**   **NCDOR's Complaint Establishes that Under the P&A Agreement, the FDIC-Receiver Is Liable for the Proposed Assessments.**

NCDOR argues that the Court should not ignore the Complaint's "allegations in the alternative, asserting the Department's claims against JPMC." (Second NCDOR Opp. at 6; *see also* First NCDOR Opp. at 4-5.)  However, JPMC has never taken issue with NCDOR's decision to plead in the alternative.  The problem arises because NCDOR must allege *facts* that support its alternative pleading in a manner that would allow the Complaint to be sustained.  (JPMC Br. at 8-9.)  NCDOR's bare request for relief "[i]f the Court should find that the Claim of [NCDOR], and liability for that Claim, was transferred to JPMC pursuant to the [P&A Agreement]" (Compl. ¶¶ 41, 46) is not enough.  A plaintiff that pleads in the alternative still "has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace," *Schneider* v. *Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005) (quotation omitted).  NCDOR has not

offered any allegations that would support its claims in the alternative against JPMC, which must be dismissed.

Having failed thus to assert alternative facts to support its alternative theory, NCDOR asserts that a contract is at issue and so the Court must deny the motions to dismiss so it can consider "the intent of the parties" or other extrinsic evidence in support of some potential, alternative claim against JPMC.  (First NCDOR Opp. at 4; Second NCDOR Opp. at 5.)  But as NCDOR acknowledges, JPMC cannot have any liability to NCDOR unless the P&A Agreement transferred liability for the proposed assessments from the FDIC-Receiver to JPMC (*see* First NCDOR Opp. at 4-5; Second NCDOR Opp. at 5-7),[3] and like any other contract, a purchase and assumption agreement is interpreted in accordance with its "plain language."  *See Vernon* v. *RTC*, 907 F.2d 1101, 1109 (11th Cir. 1990).  If the terms of the agreement are unambiguous, dismissal is proper.  *See Nextel Spectrum Acquisition Corp.* v. *Hispanic Info. & Telecomms. Network, Inc.*, 503 F. Supp. 2d 334, 338-39 (D.D.C. 2007).  A court will examine the parties' intent only if the language of a contract is ambiguous.  *See NRM Corp.* v. *Hercules Inc.*, 758 F.2d 676, 681-82 (D.C. Cir. 1985).  Here, NCDOR's Complaint and the unambiguous language of the P&A Agreement establish that the FDIC-Receiver retained liability for future assessments.  (JPMC Br. at 9-12; Compl. ¶ 31 ("[T]he description of claims transferred pursuant to the [P&A Agreement] does not appear to include the Claim of

---

[3]        NCDOR takes issue with the term "proposed assessments," stating that these assessments have become final as a matter of North Carolina law during the pendency of the dispute over liability for them.  (First NCDOR Opp. at 5-6; Second NCDOR Opp. at 7-8.)  While JPMC does not concede that the assessments are final, NCDOR's point is irrelevant, as it is undisputed that the assessments, whether proposed or final now, were only initially proposed long after WMB was closed.

[NCDOR].").)  Because this Court need not resort to questions of the parties' intent, no factual issues preclude the dismissal of NCDOR's claims against JPMC.[4]

### B.   NCDOR Has Failed to Plead Facts that Would Support Its Theories of Successor Liability and Third-Party Beneficiary Status.

NCDOR also argues in passing that "[t]he Complaint states a claim against JPMC as successor to [the FDIC-Receiver] under the statutory provisions for transfer of claims."  (Second NCDOR Opp. at 8.)  NCDOR alleges that the "FDIC-Receiver was authorized to transfer claims against WMB to JPMC as successor institution" and that the "FDIC-Receiver did transfer liability of *some* claims against WMB to JPMC pursuant to the [P&A Agreement]."  (Compl. ¶¶ 37-38 (emphasis added).)  But NCDOR nowhere alleges that the FDIC-Receiver transferred liability for *NCDOR's* claims to JPMC, and there is no reason to believe that such a transfer occurred. To the contrary, under a purchase and assumption agreement, an assuming bank acquires *specified* assets and liabilities from the FDIC-Receiver.  The assuming bank does not assume any liabilities under a *general* theory of successor liability.  *See Danilyuk* v. *JP Morgan Chase Bank, N.A.*, No. 10-0712, 2010 WL 2679843, at *3-4 (W.D. Wash. July 2, 2010) (holding that JPMC had no successor liability under the P&A Agreement for borrower claims against WMB).

NCDOR also briefly argues that "[t]he Complaint further states a claim by the Department as a third party beneficiary to the [P&A Agreement]."  (NCDOR Second Opp. at 8.)  This argument is doubly flawed.  To begin with, a contract does not confer

---

[4]      The efforts of thoughtful lawyers to create the hint of ambiguity would not change the result in this case.  Any ambiguity is construed against the FDIC as the drafter of the agreement.  *See Cole* v. *Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1486 (D.C. Cir. 1997).

legally enforceable benefits on a third party unless the right to those benefits is reflected in the contract itself.  *See Sec'y of State for Defence* v. *Trimble Navigation Ltd.*, 484 F.3d 700, 705-06 (4th Cir. 2007) (applying federal common law); *Brug* v. *Nat'l Coal. for the Homeless*, 45 F. Supp. 2d 33, 41 n.12 (D.D.C. 1999) ("Third-party beneficiaries of a government contract are assumed to be merely incidental beneficiaries, and may not enforce the contract absent a clear intent to the contrary."); *Postlewait Constr., Inc.* v. *Great Am. Ins. Cos.*, 720 P.2d 805, 806-07 (Wash. 1986) ("[T]he test of intent [to create a third-party beneficiary] is an objective one . . . .").[5]  The Complaint cites no statement in the P&A Agreement that would support creation of third-party beneficiaries, and the P&A Agreement contains none.

But even if NCDOR *were* a third-party beneficiary of the P&A Agreement, that status would not affect the analysis here, because it would not change the allocation of WMB's assets and liabilities effected under the P&A Agreement.  The purported existence of a third-party beneficiary would not somehow transfer the FDIC-Receiver's retained liability for NCDOR's later-proposed assessments to JPMC.  Therefore, NCDOR has not stated a claim against JPMC as a third-party beneficiary to the P&A Agreement.

---

[5]     The P&A Agreement provides that it "shall be governed by and construed in accordance with the federal law of the United States of America, and in the absence of controlling federal law, in accordance with the laws of the state in which the main office of the failed bank is located" (Compl. Ex. A (P&A Agreement) § 13.4), which is the State of Washington.

**C.     NCDOR's Arguments for JPMC's Liability Are Inconsistent With the Plain Language of the P&A Agreement.**

NCDOR's proposed assessments did not exist when WMB failed, but NCDOR argues in its opposition briefs that JPMC is liable for them under the P&A Agreement nonetheless either (i) because they could have been calculated based on documents existing somewhere at WMB, or (ii) because WMB's tax liabilities had "accrued" prior to September 25, 2008, and thus must be deemed to have been on WMB's Books and Records. Both propositions conflict directly with the plain terms of the P&A Agreement, logic, and public policy.

*First*, NCDOR "alleges" in its opposition briefs (but not in its Complaint) that liability for the proposed assessments could theoretically have been on WMB's "Books and Records" before WMB was closed. (First NCDOR Opp. at 5; Second NCDOR Opp. at 6-7.) NCDOR's theory seems to be the same one offered by the FDIC-Receiver: If a tax liability could be calculated based on some documents or data located somewhere at WMB, then it does not matter that WMB's Accounting Records— the source the parties looked to in defining the extent of JPMC's assumption of liabilities—reflected no liability to North Carolina. (Memorandum of Points and Authorities in Support of FDIC-Receiver's Motion to Dismiss and in Opposition to JPMorgan Chase's Motion to Dismiss, Docket Item 23-1 ("FDIC-Receiver Opp.") at 6- 10. *But see* Compl. Ex. A (P&A Agreement) at 2-3 (definitions of Book Value and Accounting Records).) As JPMC explained more fully in its opposition to the FDIC- Receiver's motion to dismiss, neither the law nor the P&A Agreement supports a reading of "Books and Records" that would require a potential assuming bank to search through every scrap of paper and every byte of electronic data to ascertain a failing bank's

liabilities.  (JPMC's Memorandum of Points and Authorities in Opposition to the Federal

Deposit Insurance Corporation's Motions to Dismiss, Docket Item 25 ("JPMC Opp.") at

13-19.)  NCDOR's position, if adopted, would undermine the receivership process for

assuming banks:  "Undoubtedly very few, if any, banks would enter into purchase and

assumption agreements with a federal receiver if the successor banks had to assume . . .

latent claims of unknown magnitude."  *Vernon* v. *RTC*, 907 F.2d at 1109.

        NCDOR's argument, like the FDIC-Receiver's argument, founders on

"Book Value," a crucial term in the P&A Agreement's transfer of liability because it

establishes the outside bounds of the liabilities JPMC assumed.  Section 2.1 of the P&A

Agreement provides in pertinent part,

> <u>Liabilities Assumed by Assuming Bank</u>. . . . [T]he
> Assuming Bank expressly assumes at Book Value . . . and
> agrees to pay, perform, and discharge, all of the liabilities
> of the Failed Bank which are reflected on the Books and
> Records of the Failed Bank as of Bank Closing . . . .

(Compl. Ex. A (P&A Agreement) at 8.)  "Book Value" is defined in the P&A Agreement

as "the dollar amount [of an assumed liability] stated on the Accounting Records of the

Failed Bank," and "Accounting Records" are specifically defined as limited to "the

general ledger and subsidiary ledgers and supporting schedules which support the general

ledger balances."  (*Id*. at 2-3.)  If WMB's general ledger, subsidiary ledgers and

supporting schedules did not, as of September 25, 2008, identify a liability with a stated

dollar value, JPMC did not assume it.  (JPMC Opp. at 10-13.)[6]  Like the FDIC-Receiver,

---

[6]    The FDIC-Receiver argues that "courts have routinely referred not to 'account
records,' but to 'bank records' and 'bank files'" when discussing what liabilities have
been transferred in other transactions.  (Reply Memorandum in Support Of FDIC-
Receiver's Motion To Dismiss, Docket Item 35 ("FDIC-Receiver Reply") at 8.)
Whatever the merits of this argument, in this case, JPMC assumed "at Book Value . . . ,

NCDOR fails even to mention the limiting term "Book Value," much less allege that the proposed assessments *had* a "Book Value" when WMB was closed.  This alone eliminates any argument that JPMC assumed liability for NCDOR's proposed assessments.  (*Id.*)[7]

> *Second*, in an implicit concession that the liabilities at issue here were *not* on WMB's Books and Records, NCDOR (like the FDIC-Receiver) pivots to a concept, "accrual," that is mentioned *nowhere* in the P&A Agreement's specification of which WMB liabilities JPMC assumed and that has no support in the law.  (JPMC Opp. at 20-21.)  In so doing, NCDOR attempts to supplant the plain language of the P&A Agreement, which requires that a liability be "reflected on" WMB's Books and Records,

---

all of the liabilities of the Failed Bank which are reflected on the Books and Records of the Failed Bank as of Bank Closing."  (Compl. Ex. A (P&A Agreement) § 2.1.)  For this reason, the remainder of the decisions cited by the FDIC-Receiver, regarding what other banks have assumed in other transactions, are similarly inapposite.

In its Reply Brief, the FDIC-Receiver says the following:  "As a large and sophisticated corporation that does business nationwide, JPMC must be aware that a company's tax positions in prior years are always subject to the risk of audit and adjustment by state tax authorities for a certain period of time following the filing of the company's return."  (FDIC-Receiver Reply at 12.)  This is nothing more than a blatant attempt to rewrite an agreement that the FDIC itself drafted.  Under the P&A Agreement, JPMC assumed only liabilities with a Book Value on WMB's Books and Records.  The FDIC knew how to draft a broader assumption, as it did for JPMC's acquisition of all of WMB's liabilities "whether or not reflected on the books of the Failed Bank as of Bank Closing."  (Compl. Ex. A (P&A Agreement) § 3.1.)  Indeed, it is exactly the risk of such purportedly increasing liabilities that leads assuming parties to contractually limit the extent of their assumption of liabilities to a stated book value as of a date certain—here, September 25, 2008.

[7]     Because JPMC contests that these liabilities could have transferred under the P&A Agreement, JPMC necessarily disputes, and has no occasion to concede, that the FDIC-Receiver's liability was extinguished even if they did somehow transfer to JPMC.  (*See* FDIC-Receiver Reply at 2 n.1.)  Even if these liabilities did somehow transfer to JPMC, the FDIC would be required to indemnify JPMC for this liability.  (Compl. Ex. A (P&A Agreement) § 12.1.)

with an argument that JPMC assumed any liability that had allegedly "accrued" as a matter of law, regardless of whether that liability had a Book Value or was reflected on WMB's Books and Records.  Likewise, the FDIC-Receiver argues that JPMC assumed liability for the proposed assessments because they were "discernable" when WMB failed.  (FDIC-Receiver Reply at 2.)  But there is no allegation or reason to believe these liabilities were in fact "discernable," and in any event being "discernable" does not create a Book Value on WMB's Books and Records.  Because these arguments contradict the unambiguous terms of the P&A Agreement, they should be rejected.  (*See* JPMC Opp. at 13-19.)

> **D.    NCDOR's New Materials Confirm that Liability for the Proposed Assessments Could Not Have Been Transferred Under the P&A Agreement.**

With its second Opposition to JPMC's Motion to Dismiss, NCDOR has filed an affidavit of Jerri M. Noland, reportedly an auditor employed by NCDOR, along with eight supporting exhibits.  (Noland Aff. & Exhibits, Docket Items 29-1 to 29-9.)  None of these documents can be considered on a motion to dismiss.  As this Court has held, "[i]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Arbitraje Casa de Cambio, S.A. de C.V.* v. *U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) (internal quotation marks omitted).[8]  But even if

---

[8]    For this reason, NCDOR has not offered a meaningful response to the argument that the statute of limitations bars NCDOR's claims for tax years 1998–2001, which JPMC asserts is a basis for dismissal of these claims.  The FDIC-Receiver has shown that the allegations in the Complaint and its exhibits demonstrate that the statute of limitations has expired.  (FDIC-Receiver Opp. at 13-15.)  NCDOR's only response is to cite the Noland affidavit and its exhibits.  (Second NCDOR Opp. at 8-9.)  Because these documents are not properly before the Court, they cannot be used to defeat a motion to dismiss.

these documents could be considered, they still would not cure the fatal flaw in

NCDOR's case.  Because the proposed assessments were issued three months after WMB

failed, JPMC could not have assumed them under the P&A Agreement.

None of the documents attached to the Noland Affidavit are "Books and

Records" and/or "Accounting Records" of WMB within the meaning of the P&A

Agreement.[9]  Even if they were, they do not evidence that NCDOR's proposed

assessments were "reflected on" the Books and Records when WMB failed.  Instead,

these documents show exactly the opposite:  NCDOR's proposed assessments could *not*

have been reflected on WMB's Books and Records or reduced to a specific Book Value

when WMB failed, and thus that JPMC is not liable for these assessments under the P&A

Agreement.[10]

First, the exhibits to the Noland Affidavit can be put into three groups:

*First*, the exhibits show that WMB filed amended returns for tax years

1998–2000 on October 20, 2008—nearly a month after WMB failed—showing a refund

---

[9]     *See also Santopadre* v. *Pelican Homestead & Savings Ass'n*, 937 F.2d 268, 272
(5th Cir. 1991); *In re Collins Sec. Corp.*, 998 F.2d 551, 554-55 (8th Cir. 1993) (treating
"books and records" and "account records" as synonymous); *Villafañe-Neriz* v. *FDIC*, 75
F.3d 727, 731 (1st Cir. 1996) (same).

[10]    If the Court were to determine that JPMC is liable for the proposed assessments
for a reason other than an express transfer of liabilities under the P&A Agreement, the
outcome would be the same (FDIC liability) because the FDIC would be required to
indemnify JPMC.  (Compl. Ex. A (P&A Agreement) § 12.1 ("[T]he Receiver [with the
guarantee of FDIC-Corporate] agrees to indemnify and hold harmless [JPMC] against
any and all costs, losses, liabilities, expenses (including attorneys' fees) . . . , judgments,
fines and amounts paid in settlement actually and reasonably incurred in connection with
claims . . . based on liabilities of the Failed Bank that are not assumed by [JPMC]
pursuant to this Agreement . . . .").)  In its Reply in Support of Its Motion to Dismiss,
FDIC-Corporate does not dispute that it is a guarantor of the indemnity, and thus it is a
proper party to this action.  (Docket Item 34 at 2.)

due from NCDOR.  (Noland Aff. Ex. D.)  NCDOR's proposed assessments for tax years

1998–2000 were allegedly calculated based on these returns.  (Noland Aff. at 2.)

Therefore, liability for NCDOR's proposed assessments for tax years 1998–2000 could

not have been reflected as a liability on WMB's Books and Records or reduced to a Book

Value on WMB's Accounting Records as of September 25, 2008, before the amended

returns were even generated.

       *Second*, the exhibits show that WMB filed amended returns for tax years

2001–2003 in December 2007.  (Noland Aff. Ex. A.)  Based on these amended returns, in

June 2008, NCDOR issued "proposed audit reports" setting forth NCDOR's position on

WMB's taxes for those years.  (Noland Aff. at 2; *id*. Ex. B.)  Citing these reports,

NCDOR argues that "JPMC further received the proposed assessment for 2001 - 2003

before the [P&A Agreement] was executed."  (NCDOR Second Opp. at 7.)  But even a

casual look at the "proposed audit reports" shows that they are not the "proposed

assessments" that NCDOR wishes them to be, nor do they reflect any agreement by

WMB that such assessments were proper, let alone already reduced to entries on the

bank's Books and Records.  At best, these documents evidence a discussion about

liabilities that may be liquidated in the future, but that were clearly disputed and not on

the Books and Records when WMB failed.  Indeed, on September 17, 2008, NCDOR

granted WMB additional time to review the proposed audit reports (Noland Aff. Ex. C),

showing that any proposed tax liability was still a matter of debate between WMB and

NCDOR at that time, with WMB still maintaining (as it does today) that it was due a

refund.  NCDOR has not alleged that this debate was resolved and that resolution was

reduced to a Book Value on the Books and Records before WMB failed eight days later.

*Last*, the remainder of the exhibits are allegedly waivers of the statute of limitations, a power of attorney, and requests for documents.[11]  (Noland Aff. Exs. E-H.) None of these exhibits purports to show any tax liability for WMB or JPMC as of the time the bank failed.

In sum, even if this evidence were properly before the Court in an amended complaint, it would not provide any factual support for the notion that the December 2008 proposed assessments at the heart of NCDOR's Complaint were on WMB's Books and Records in September 2008.[12]  The Noland Affidavit, like all of NCDOR's papers, does not allege that WMB's putative liability had been reduced to a Book Value.  In fact, by holding up the unresolved tax disputes for the tax years 2001–2003 as its *only* evidence that WMB was made aware of NCDOR's proposed assessments, NCDOR reaffirms that WMB had *not* booked any liability for those tax years, and further concedes that *for tax year 2007*, which represents the vast majority of NCDOR's claim, the tax refund WMB had booked was not even disputed on September

---

[11]     NCDOR suggests that because "JPMC was involved in the tax negotiations with [NCDOR] . . . , JPMC's actions are consistent with having knowledge of and liability for a claim."  (Second NCDOR Opp. at 5.)  What NCDOR fails to say is that JPMC's actions are consistent with its pursuit of a *refund* from NCDOR.  Refunds are, of course, assets, and JPMC acquired all assets "*whether or not reflected on the books* of the Failed Bank as of Bank Closing."  (Compl. Ex. A (P&A Agreement) § 3.1 (emphasis added); JPMC Opp. at 20.)  No party disputes that the refund was reflected on WMB's Books and Records on September 25, 2008.  (*See* JPMC Br. at 11 & n.3.)  As JPMC had purchased a tax refund from NCDOR pursuant to the P&A Agreement, it is only natural that JPMC would engage with NCDOR in pursuit of that refund.

[12]     Because the proposed assessments could not have been on WMB's Books and Records when it failed, there is no basis for NCDOR's claim that JPMC should be equitably estopped from arguing that the claims were not on WMB's Books and Records.  (Second NCDOR Opp. at 5, 8.)  In any event, JPMC does not concede that it has denied NCDOR access to WMB's Books and Records.

25, 2008.  (*See* Compl. ¶¶ 17-18.)  If WMB was unaware of any proposed tax assessment when it failed, then no such assessment could have been reflected on WMB's Books and Records or been reduced to a Book Value.  In short, nothing in the Noland Affidavit or its exhibits suggests that JPMC is liable for NCDOR's proposed assessments.

## II.      LEAVE TO AMEND THE COMPLAINT SHOULD BE DENIED.

If this Court dismisses NCDOR's claims against JPMC, NCDOR will presumably seek leave to amend its Complaint.  Such a request should be denied.  Under Rule 15(a), "[a] court may deny a motion to amend if it finds . . . 'futility of amendment.'"  *Ponce* v. *Billington*, 652 F. Supp. 2d 71, 73 (D.D.C. 2009) (quoting *Foman* v. *Davis*, 371 U.S. 178, 182 (1962)).  "A motion to amend a complaint is futile if the proposed claim would not survive a motion to dismiss."  *Ponce*, 652 F. Supp. 2d at 73 (quotation and citation omitted).  At its most basic level, this case is about whether proposed tax assessments dated December 29, 2008, were reflected on WMB's Books and Records at a particular Book Value as of September 25, 2008.  This proposition is both facially impossible and not alleged in the Complaint, and NCDOR's new affidavit offers nothing that would change these facts.  Because no amendment to the Complaint can cure this fatal flaw, leave to amend should be denied.

**CONCLUSION**

NCDOR's Complaint and motion papers show that the FDIC-Receiver, and *only* the FDIC-Receiver, has liability for NCDOR's proposed tax assessments.  For the foregoing reasons, JPMC respectfully requests that this Court grant JPMC's motion to dismiss for failure to state a claim.


Dated:   September 24, 2010          Respectfully submitted,
         Washington, D.C.

                                       /s/ Brent J. McIntosh

Robert A. Sacks (admitted *pro hac vice*)      Brent J. McIntosh (D.C. Bar No. 991470)
Stacey R. Friedman (admitted *pro hac vice*)   Bruce W. Hickey (D.C. Bar No. 479036)
SULLIVAN & CROMWELL LLP                         SULLIVAN & CROMWELL LLP
125 Broad Street                                1701 Pennsylvania Avenue, N.W.
New York, New York  10004                       Washington, D.C.  20006
Telephone:  (212) 558-4000                      Telephone:  (202) 956-7500
Facsimile:  (212) 558-3588                      Facsimile:  (202) 293-6330

                                                *Counsel for Defendant*
                                                *JPMorgan Chase Bank, N.A.*